UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| ZACHARY FOOTE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 18-141-WOB |
| | ) | |
| V. | ) | |
| | ) | |
| DANIEL DEGENHARDT, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Daniel Degenhardt has filed a motion for summary judgment upon the claim asserted against him by plaintiff Zachary Foote.[1] [R. 18] Foote filed several documents in response to that motion [R. 20, 22, 23, 23-1, 26, 27] before his deadline to file a formal response expired. See [R. 19] The Court will liberally construe these filings as collectively constituting his response to the motion. The matter is therefore ripe for decision.

This case arises from a brief altercation between Officer Degenhardt and Foote, an inmate at the Kenton County Detention Center ("KCDC"). At approximately 9:00 a.m. on the morning of May 17, 2018, Officer Degenhardt imposed an "in-house sanction" on Foote for having excessive bed linens at his bunk and for being disruptive. Foote alleges that at this time Degenhardt was overly aggressive towards his person and his property. [R. 1 at 5] An Incident Report created by Degenhardt states that he ordered Foote to stay at his bunk unless he was

---

[1] Degenhardt, through counsel, has recently filed a motion requesting permission to submit a corrected brief. [R. 32] The original brief cited two decisions of the Sixth Circuit [R. 18-1 at 8] that were subsequently abrogated in *Jones v. Bock*, 549 U.S. 199, 217 (2007). See *Grinter v. Knight*, 532 F.3d 567, 578 n.8 (6th Cir. 2008). The Court appreciates counsel's diligence and candor, finds the motion to be well taken, and will grant the request.

given permission to leave [R. 18-3 at 1]; Foote alleges that he was nonetheless unaware that he could not leave his bunk to use the restroom [R. 1 at 5].

Thirty minutes later, Foote walked to the restroom in the unit to brush his teeth. Officer Degenhardt walked into the restroom area, ordered Foote to return to his bunk, and refused Foote's repeated requests that he first be allowed to spit out his toothpaste. *Id*. The parties agree that Foote spit out his toothpaste after he had left the restroom area, with Degenhardt asserting that Foote directed his spittle in his general direction. [R. 1 at 6; R. 18-3 at 1]

Officer Degenhardt then took Foote to the ground, although the parties differ significantly as to the particulars. Foote alleges that Degenhardt acted without warning, forced him to the ground, choked him for a full minute before calling for backup, and then drove his knee into Foote's face, all while he was putting up no resistance. [R. 1 at 6] In his Incident Report, Degenhardt stated that he took Foote to the ground only after Foote refused a direct order to face away from him and to place his hands above his head so that he could be handcuffed. He further stated that once Foote was face-down on the ground, he applied a "vascular restraint" only after Foote attempted to tuck his hands underneath his body to prevent handcuffing. At this point Foote ceased resistance and was handcuffed. [R. 18-3 at 1]

A surveillance video submitted by Degenhardt on CD-R [R. 16] offers additional perspective on these competing versions of events. The video footage has its limitations: there is no audio to confirm what was said between the two men, and the "action" occurs in only one-sixteenth of the frame in the upper left hand corner of the picture. However, it does show that after the men had exited through the open doorway of the restroom, Degenhardt pointed towards Foote as if directing him to do something. Foote - facing perpendicular to Degenhardt - raises both of his hands up and to his sides, expressing at least exasperation and perhaps agitation.

2

Degenhardt points towards Foote a second time. At this point, Foote quickly turns his body to the left, first facing Degenhardt and then continuing to turn left until he faces partially towards the open doorway of the bathroom, and then appears to spit in that direction. Foote then immediately begins to walk away from Degenhardt. Without any visible pause, Degenhardt moves toward Foote and takes him to the ground, the entire process taking no more than 3-4 seconds. Over the next 20-25 seconds Foote at times appears docile, but at others can be seen moving, squirming, or actively resisting with his arms, legs, or both. Once he ceases, Degenhardt takes the next 10 seconds to handcuff Foote and to use a radio at his hip to call for assistance. Other officers appear almost immediately thereafter, at which time Foote is brought to his feet and escorted out of the unit. [R. 16 at 9:30:55 a.m. - 9:32:10 a.m.] Pictures taken of Foote after the incident show that he suffered a bloody nose and redness of the skin on the left side of his face. [R. 16]

Foote does not indicate whether he received any disciplinary sanctions from LCDC for his conduct. However, he appears to have filed a grievance on May 19, 2018 challenging an action taken by the LCDC disciplinary committee. That grievance was rejected on May 20, 2018 as raising a non-grievable issue because Foote filed a general grievance rather than appeal through LCDC's separate grievance process for disciplinary appeals. [R. 1-1 at 1 ("You are attempting to grieve an issue that was decided on by the disciplinary committee. These decisions are appealed through the disciplinary appeal process, not the grievance instrument."); see also R. 18-6 at 3] On May 19, 2018, Foote filed a second inmate grievance, this one complaining that Degenhardt used excessive force against him. That grievance was denied by the Shift Commander at Level II of the grievance process on May 20, 2018. Foote took no appeal from that denial. [R. 18-5]

3

In his complaint, Foote alleges that he suffered a bloody nose, bruises to the face and neck, and a broken tooth. Foote claims that Degenhardt used excessive force in violation of his constitutional rights, and seeks compensatory damages. [R. 1 at 7]

Degenhardt seeks summary judgment on Foote's excessive force claim on two grounds. First, he claims entitlement to qualified immunity based upon the surveillance video footage filed into the record that shows, he contends, that he did not use force beyond that reasonably necessary to subdue Foote. [R. 32-1 at 2-3, 5-7] Second, Degenhardt contends that Foote did not appeal from the denial of his inmate grievance regarding Degenhardt's use of force, and therefore failed to exhaust his administrative remedies as required by law. [R. 32-1 at 3-4, 8]

As previously noted, Foote responded to Degenhardt's motion with several letters and one motion.[2] In his first letter [R. 22] Foote requested discovery, a form of relief the Court had previously denied without prejudice on procedural grounds [R. 21]. Foote's second request suffers from the same defects as its predecessor: Foote did not support his request with the required affidavit or declaration, and failed to explain in particularized terms why the discovery was necessary to oppose Degenhardt's motion for summary judgment. The request for discovery, construed as arising under Federal Rule of Civil Procedure 56(d), will be denied. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).

Foote also requested that the Court add Kenton County Detention Center and Jailer Terry Carl as defendants for violating his due process rights. [R. 22 at 2] The Court will liberally

---

[2] At the outset of this case Foote was advised that if he wished to seek relief from the Court, he must file a formal motion and certify that he served a copy of the motion upon opposing counsel. Foote was also provided with a sample document to use as a form to comply with these rules. [R. 8 at 2; R. 8-1] All of Foote's subsequent filings have disregarded these procedural requirements. The Court will overlook these shortcomings at this juncture, but Foote is directed to adhere to them in the future.

construe that informal request as a motion. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, that motion will be denied because Foote did not tender an amended complaint including his proposed claims against these persons. See *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 414 (6th Cir. 2014). In addition, KCDC is not a suable defendant. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008). The Court could construe that claim as one against Kenton County itself, *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), but Foote makes no claim that Degenhardt acted pursuant to and consistent with a policy or custom of Kenton County, and therefore fails to state a claim for relief against the county. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). And Jailer Carl is not liable for Degenhardt's actions under a theory of *respondeat superior* merely because he employs him. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Because it appears that the proposed amendment would be futile, leave to amend will be denied. *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).

Foote also filed a motion requesting that the Court appoint counsel to represent him in this matter. [R. 23] Title 28, United States Code § 1915(e)(1) authorizes a federal court to appoint counsel to represent a *pro se* party in civil litigation, but only in truly exceptional circumstances. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). When considering whether to grant such a request, the court considers the complexity of the case, the movant's likelihood of success on the merits of the claim, and the ability of the plaintiff to represent himself adequately. *Cleary v. Mukaskey*, 307 F. App'x 963, 965 (6th Cir. 2009). Here, Foote's excessive force claim is not substantively or procedurally complex. Degenhardt's summary judgment motion asks, at bottom, only whether it was sufficiently clear that he used "too much" force, and whether Foote followed a straightforward grievance process to its conclusion. While Foote has made mistakes in prosecuting his claim, such missteps are typical of *pro se* litigants, and the Court has afforded

5

him additional latitude in procedural matters and indulged a liberal construction of his claims. Considering the *Lanier* factors, the Court concludes that this case does not present the kind of extraordinary circumstances which would warrant the appointment of counsel in this civil matter.

Turning to the substance of Degenhardt's motion for summary judgment, a moving party must establish that even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Loyd v. St. Joseph Mercy Oakland*, 766 F. 3d 580, 588 (6th Cir. 2014). The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005).

First, Degenhardt's argument that he is entitled to qualified immunity against Foote's excessive force claim is convincing. A government official is entitled to qualified immunity against a claim for damages "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Although the defendant must plead qualified immunity as an affirmative defense, the plaintiff bears the burden of proving that a reasonable official in the defendant's shoes would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Id*. (citing *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002)). When reviewing the reasonableness of an officer's use of force, the Court must do so from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because "police officers are often forced to make split-second judgments" in response to tense and rapidly evolving circumstances, the Court affords

officers a degree of latitude when assessing their exercise of on-the-spot discretion. *Plumhoff v. Rickard*, __ U.S. __, 134 S. Ct. 2012, 2020 (2014).

In the context of an officer's attempt to subdue an actively-resisting person, the use of some degree of force may be appropriate where the plaintiff "resisted the deputies' attempts to restrain and handcuff him by kicking, flailing, and wriggling away from their grasp." *Roell v. Hamilton County, Ohio/Hamilton County Board of County Commissioners*, 870 F.3d 471, 482 (6th Cir. 2017). Here, Foote's assertions regarding the reasonableness of the force applied are insufficient to establish that Degenhardt should have known that his conduct clearly violated Foote's constitutional rights. This is true, in part, because Foote's allegations regarding the duration of the force applied and that he never actively resisted Degenhardt's efforts to handcuff him are contradicted by the video evidence of record in this matter. Facts considered at the summary judgment stage are ordinarily viewed in the light most favorable to the plaintiff, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where there is video footage that "depicts all of the genuinely disputed facts," the facts are viewed "in the light depicted by the videotape." *Standifer v. Lacon*, 587 F. App'x 919, 920-23 (6th Cir. 2014) (quoting *Scott*, 550 U.S. at 380-81).

While the surveillance video footage has its limitations, it does establish that Degenhardt was only applying a meaningful level of force to Foote for at most 30 seconds, and that during significant portions of this period Foote can be clearly seen raising his legs and pushing his hands against the floor in an effort to get up off the floor instead of complying with Degenhardt's efforts to handcuff him. [R. 16 at 9:31:10 a.m. - 9:31:40 a.m.] In addition, while Foote did suffer a bloodied nose and reddened face, these injuries appeared relatively minor and a medical examination conducted after the incident did not reveal significant injury. [R. 16]

7

Under circumstances like these, an officer's conduct in subduing a resisting inmate does not so clearly violate the detainee's constitutional rights so as to overcome an officer's qualified immunity. To show that an officer violated the inmate's *clearly established* constitutional rights, the plaintiff must "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment." *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 552 (2017). Foote points to no such case decided prior to the events in question, and courts facing similar circumstances have pointed to the absence of such authority as a basis to conclude that the officer was not clearly on notice of the allegedly unconstitutional nature of his conduct. See *Scott v. Kent Co.*, 679 F. App'x 435, 437-38, 440-41 (6th Cir. 2017) (holding that corrections officer was entitled to qualified immunity for taking agitated and demonstrative inmate to the ground, resulting in bleeding laceration to inmate's nose, where inmate failed to "point to clearly established law that would have put a police officer on notice that a takedown in such close quarters, under these circumstances, was an unlawful use of force."); *Rudlaff v. Gillispie*, 791 F.3d 638, 641-44 (6th Cir. 2015) (police officer did not violate arrestee's Fourth Amendment rights by using a TASER on him after he actively and persistently resisted handcuffing, and officer was entitled to qualified immunity regardless because existing case law did not "put the precise question 'beyond debate.'") (citing *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)). Degenhardt is therefore entitled to qualified immunity with respect to Foote's claim.

Even if this were not so, Degenhardt is also correct that Foote did not fully and properly exhaust his administrative remedies with respect to his excessive force claim. [R. 32-1 at 3-4, 8] Federal law requires a prisoner to fully utilize the prison's inmate grievance system before filing suit to assert a civil claim regarding the conditions of his confinement. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory

under the PLRA and that unexhausted claims cannot be brought in court."). LCDC's Offender Grievance Procedure requires an inmate to first attempt to informally resolve the problem at Level I, and then if unsuccessful to file a formal grievance at Level II within thirty days after the event complained of. If the Shift Commander denies the grievance at that level, the inmate must appeal to the Section Head at Level III within five days. The procedure also requires additional levels of appeal to the Chief Deputy at Level IV and to the Jailer at Level V. [R. 18-6 at 5-8] In this case, Foote attempted informal resolution at Level I, and once unsuccessful filed an appeal to the Shift Commander at Level II. However, the appeal was denied the next day, and Foote took no further appeal to the Section Head or beyond. [R. 18-5 at 1-2] Because a prisoner must "complete the administrative review process in accordance with the applicable procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 88 (2006), Foote's failure to pursue appeals at any of the available levels renders his claim unexhausted. Summary judgment is therefore also appropriate because no reasonable jury could find that Foote exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012).

Accordingly, it is **ORDERED** as follows:

1. Defendant Degenhardt's "Motion to File Corrected Brief in Support of Summary Judgment on Behalf of Daniel Degenhardt in his Individual Capacity" [R. 32] is **GRANTED**.

2. Plaintiff Foote's construed motion for miscellaneous relief [R. 22] is **DENIED**.

3. Foote's motion to appoint counsel [R. 23] is **DENIED**.

4. Degenhardt's motion for summary judgment [R. 18] is **GRANTED**.

5. Foote's Complaint [R. 1] is **DISMISSED**.

6. The Court will enter a Judgment contemporaneously with this Order.

7. This matter is **STRICKEN** from the active docket.

This 21st day of December, 2018.



Signed By:
*William O. Bertelsman* WOB
United States District Judge